IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **HAARSLEV, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2575-KHV |
| | ) | |
| **CHRISTENSEN MACHINE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On November 30, 2023, in the District Court of Johnson County, Kansas, plaintiff filed suit against Christensen Machine, Inc. ("CMI"), alleging breach of contract (Count I), unjust enrichment (Count II), negligent misrepresentation (Count III) and fraudulent misrepresentation (Count IV). See Petition (Doc. #1-1) filed December 28, 2023. On December 28, 2023, defendant removed the case to federal court based on diversity jurisdiction. See Notice Of Removal (Doc. #1). This matter comes before the Court on Defendant Christensen Machine, Inc.'s Motion To Dismiss And Memorandum In Support (Doc. #10) filed January 18, 2024. For reasons stated below, the Court overrules defendant's motion.

## Legal Standard

When defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., plaintiff bears the burden to establish personal jurisdiction over defendant. Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch, 750 F.3d 1178, 1179–80 (10th Cir. 2014). At these preliminary stages of litigation, plaintiff's burden to prove personal jurisdiction is light. AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1056 (10th Cir. 2008). To defeat the motion, plaintiff need only make a prima facie showing of

personal jurisdiction. Id. Plaintiff can do so by showing facts, through affidavit or other written materials, that if true would support jurisdiction over defendant. Id.; see also Wenz v. Memery Crystal, 55 F.3d 1503, 1508 (10th Cir. 1995) (plaintiff can support jurisdictional allegations "by competent proof"). When evaluating the prima facie case, the Court must resolve all factual disputes in favor of plaintiff. AST Sports, 514 F.3d at 1056.

**Factual Background**

Plaintiff's petition in Johnson County alleges as follows:

Plaintiff is a North Carolina corporation that designs, manufactures, sells and installs equipment for the food, food byproducts and pet food industries. Plaintiff has its principal place of business in Lenexa, Kansas and is registered to do business in Kansas. Plaintiff employed Michael Chapple as Sales & Project Engineer. Chapple acted as project manager on the DemKota Project, a manufacturing and installation project in Aberdeen, South Dakota.

Defendant, an Idaho corporation with its principal place of business in Heyburn, Idaho, is in the business of manufacturing and installing commercial food and food byproducts equipment. Before plaintiff hired him, Chapple worked in Idaho where he formed a connection with defendant and its then employee, Jeff Muir.

While working for plaintiff, Chapple sought out defendant to produce certain pieces of food processing equipment for the DemKota Project. On September 20, 2021, defendant prepared and sent an initial quote for the project. The next day, Chapple approved Purchase Order #15795 for $1,200,000 to cover the manufacturing of equipment listed in defendant's quote.[1]

---

[1] In its motion to dismiss, defendant asks the Court to take judicial notice of plaintiff's petition in a related suit, see generally Haarslev, Inc. v. Michael Chapple, No. 2:24-cv-02003-KHV-RES (D. Kan.). Motion To Dismiss (Doc. #10) at 2 n.2. According to defendant,
(continued . . .)

On March 17, 2022, defendant asked Chapple about the scope of work to which the parties agreed in Purchase Order #15795. On March 18, 2022, defendant sent plaintiff a Bill of Lading which listed parts that defendant had shipped for the project. Defendant's work under Purchase Order #15795 ended in April of 2022 after it produced a defective raw bin which required on-site repairs. Shortly thereafter, plaintiff's customer requested that plaintiff remove defendant from the project. In its final invoice, defendant stated that it had left the project facility "as is, incomplete, per request by customer." Petition (Doc. #1-1), ¶ 36.

From September 21, 2021 until April 1, 2022, defendant issued four invoices to plaintiff related to Purchase Order #15795. Chapple approved them and plaintiff paid them in full.[2] On these invoices, defendant (1) intentionally kept its descriptions vague to prevent plaintiff from knowing what defendant was charging it for, (2) charged plaintiff an unreasonable profit margin, (3) included $235,382.51 in undisclosed mark-ups and (4) asked plaintiff to pay for items that are typically not compensable under a time and materials contract, including Muir's sales commission and salary.

On November 30, 2023, in the District Court of Johnson County, Kansas, plaintiff filed

---

[1] (. . . continued)
plaintiff alleged that its employment contract with Chapple specifies that he works out of plaintiff's Missouri office. See Petition, Haarslev, Inc. v. Michael Chapple, No. 2:24-cv-02003-KHV-RES (D. Kan.), ECF Doc. 1-1.

While a court may take judicial notice of its own records as well as those of other courts, especially in closely-related cases, the Court declines to do so in this instance because plaintiff has alleged that it issued Purchase Order #15795 from its office in Kansas and made its payments to defendant under that contract from its office in Kansas. Svendsen Affidavit (Doc. #16-1), ¶¶ 15, 17; see Hutchinson v. Hahn, 402 F. App'x 391, 394 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); AST Sports, 514 F.3d at 1056 (court must resolve factual disputes in plaintiff's favor).

[2] These invoices include Invoices #93308 ($600,000), #93672 ($125,000), #93705 ($350,000) and #93713 ($57,281.61). Petition (Doc. #1-1), ¶¶ 19–24, 30–32, 35–37.

suit against defendant, alleging breach of contract (Count I), unjust enrichment (Count II), negligent misrepresentation (Count III) and fraudulent misrepresentation (Count IV). See Petition (Doc. #1-1). On December 28, 2023, defendant removed the case to federal court.

On January 18, 2024, defendant filed a motion to dismiss for lack of personal jurisdiction. See Defendant's Motion To Dismiss (Doc. #10). To its response to defendant's motion, plaintiff attached the affidavit of Troels Svendsen, president of Haarslev, Inc. See Affidavit Of Troels Svendsen (Doc. #16-1). The affidavit asserts that on June 14, 2021, defendant submitted its Vendor Information Sheet to plaintiff which indicated defendant's intent to conduct business with plaintiff. Id., ¶ 8. On or about September 1, 2021, plaintiff relocated its corporate headquarters from Kansas City, Missouri to Lenexa, Kansas and has since maintained its headquarters in Kansas. Id., ¶ 5. On September 21, 2021, a few weeks after its relocation, plaintiff issued Purchase Order #15795. Id., ¶ 14. Although plaintiff issued Purchase Order #15795 out of its office in Kansas, the document lists plaintiff's previous address in Missouri. Id., ¶ 15. The affidavit also states that (1) defendant addressed and submitted its invoices for Purchase Order #15795 to plaintiff's headquarters in Kansas, (2) between November 1, 2021 and June 7, 2022, plaintiff made four payments to defendant out of its office in Kansas and (3) between June of 2021 and June of 2022, defendant regularly communicated with plaintiff's employees in Kansas. Id., ¶¶ 12, 13, 16–18.

Unrelated to Purchase Order #15795 and defendant's invoices under that agreement, the affidavit also states that (1) between June 15, 2021 and June 30, 2022, plaintiff issued 25 purchase order agreements to defendant, (2) plaintiff issued 16 of the 25 purchase order agreements out of its office in Kansas and (3) plaintiff issued 19 payments to plaintiff, 18 of which plaintiff issued out of its office in Kansas. Id., ¶¶ 9–13.

**Analysis**

For the Court to exercise personal jurisdiction in a diversity action, plaintiff must show that personal jurisdiction is proper under the laws of the forum state and that doing so comports with the due process requirements of the United States Constitution. See Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). The Kansas long-arm statute permits the exercise of any jurisdiction that is consistent with the due process requirements of the United States Constitution. See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304–05 (10th Cir. 1994); see also K.S.A. § 60-308(b)(1)(L). Accordingly, the Court need not conduct a separate personal jurisdiction analysis under Kansas law, and instead may proceed directly to the due process inquiry under federal law. See Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014) (where long-arm statute confers maximum jurisdiction consistent with Due Process Clause, statutory inquiry effectively collapses into constitutional analysis).

The due process analysis requires the Court to determine (1) whether defendant has "minimum contacts with the forum state such that [it] should reasonably anticipate being hailed into court there" and (2) if defendant's actions establish minimum contacts, whether the exercise of personal jurisdiction over it "offends traditional notions of fair play and substantial justice." AST Sports, 514 F.3d at 1057. To satisfy the "minimum contacts" standard, plaintiff can establish that the Court has either (1) general jurisdiction or (2) specific jurisdiction. Rockwood Select, 750 F.3d at 1179.

Plaintiff alleges that the Court may exercise specific personal jurisdiction under K.S.A. § 60-308(b) because defendant transacted business in Kansas and committed tortious acts that caused injury to plaintiff in Kansas. See K.S.A. § 60-308(b)(A), (B). In addition, plaintiff argues that defendant has continuous and systematic contact with plaintiff in Kansas. Plaintiff's

<u>Suggestions In Opposition To Defendant's Motion To Dismiss And Memorandum In Support</u> (Doc. #16) filed February 8, 2024 at 8, 10.  Because plaintiff alleges that the Court has jurisdiction over defendant pursuant to K.S.A. § 60-308(b), and § 60-308(b)(2) confers general jurisdiction over nonresidents whose contacts with Kansas are "substantial, continuous and systematic," the Court interprets plaintiff's complaint as alleging both general and specific jurisdiction and analyzes both grounds for jurisdiction.

**I.     General Jurisdiction**

Plaintiff argues that the Court has general jurisdiction because apart from defendant's work under Purchase Order #15795, defendant (1) regularly communicated with plaintiff in Kansas, (2) submitted a Vendor Information Sheet indicating that it intended to do business with plaintiff, a Kansas resident, (3) entered into purchase order agreements with plaintiff, a Kansas resident and (4) received payments from plaintiff out of plaintiff's office in Kansas.

Courts may exercise general personal jurisdiction over a nonresident defendant "if its contacts with the State are so continuous and systematic that the person is essentially at home in the State."  <u>XMission, L.C. v. Fluent LLC</u>, 955 F.3d 833, 840 (10th Cir. 2020) (citation omitted). General personal jurisdiction in a forum other than defendant's place of incorporation or principal place of business will exist only in "exceptional case[s]" where defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State."  <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 n.19 (2014).  "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there."  <u>Shrader v. Biddinger</u>, 633 F.3d 1235, 1246–47 (10th Cir. 2011).

Because general jurisdiction need not relate to events giving rise to plaintiff's claims, courts impose a more stringent minimum contacts test and consider (1) whether defendant solicits

business in the state through a local office or agents; (2) whether defendant sends agents into the state on regular business to solicit business; (3) the extent to which defendant holds itself out as doing business in the forum state through advertisements or bank accounts; and (4) the volume of business that defendant conducts in state.  Trierweiler v. Croxton Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996) (citation omitted); see also Benton v. Cameco Corp., 375 F.3d 1070, 1080 (10th Cir. 2004).

The parties do not allege that defendant (1) has a local office or agents in Kansas, (2) sends agents into the state to solicit business or (3) holds itself out as doing business in Kansas.  Plaintiff argues that because it issued purchase order agreements and payments from its Kansas office to defendant, defendant conducted a volume of business in Kansas that is sufficient for general jurisdiction.  In some circumstances, revenue earned from a business in a particular state might suffice to establish general jurisdiction.  But the Court must analyze the volume of defendant's business with Kansas in the context of its operations as a whole.  See Daimler, 571 U.S. at 117 n.20 (general jurisdiction inquiry does not focus solely on magnitude of defendant's in-state contacts; general jurisdiction calls for appraisal of corporation's activities in their entirety, nationwide and worldwide).  Plaintiff has not offered facts that analyze the volume of defendant's business with Kansas in the context of its entire operations.  Accordingly, plaintiff has not shown that the Court can exercise general personal jurisdiction over defendant.

**II.     Specific Jurisdiction**

      A.     Purposeful Direction

Courts may exercise specific personal jurisdiction over a defendant when it "purposely directed" its activities at residents of the forum state, and plaintiff's alleged injuries "arise out of" the forum-related activities.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071

(10th Cir. 2008). For the Court to find specific jurisdiction, plaintiff must allege "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). The aim of the "purposeful direction" doctrine is to ensure that defendant is not bound to account for merely "random, fortuitous, or attenuated contacts" with the forum state. Id. (quotations and citation omitted).

Plaintiff argues that the Court may exercise specific personal jurisdiction pursuant to the Kansas long-arm statute because defendant transacted business within the state and committed tortious acts within the state. Petition (Doc. #1-1), ¶¶ 3, 12–18, 96–110; see also K.S.A. § 60-308(b)(1)(A), (B).

The Tenth Circuit has identified several frameworks for determining whether an out-of-state defendant's contacts with the forum satisfy the "purposeful direction" requirement. In mixed torts and contract cases, the Tenth Circuit has applied the "effects test." Eighteen Seventy, LP v. Jayson, 32 F.4th 956, 966–67 (10th Cir. 2022) (discussing Calder v. Jones, 465 U.S. 783 (1984)); id. at 966 n.9 (discussing Dental Dynamics, LLC v. Jolly Dental Grp., LLC, 946 F.3d 1223, 1229 n.3 (10th Cir. 2020), which applies effects test to mixed tort and contract case). Here, plaintiff asserts tort and contract claims and thus the Court analyzes whether it has personal jurisdiction under the effects test.

The "effects test" is used to determine whether defendant purposefully directed its activities at the forum state. Dudnikov, 514 F.3d at 1072. Under this test, plaintiff can establish purposeful direction by showing that defendant took (1) an intentional action, that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. Id. To find personal jurisdiction, the test requires more than just harm which

-8-

plaintiff suffered in the forum state; defendant's conduct must also connect it "to the forum in a meaningful way." Butler v. Daimler Trucks N. Am., LLC, 433 F. Supp. 3d 1216, 1233 (D. Kan. 2020) (quoting Heffington v. Puleo, Case No. 17-1192-EFM, 2018 WL 690995, at *5 (D. Kan. Feb. 2, 2018)).

Mere injury to a forum resident or knowledge of plaintiff's residence in the forum state, without more, cannot establish defendant's express aim towards the forum state. Walden v. Fiore, 571 U.S. 277, 289, 290 (2014); see also Eighteen Seventy, 32 F.4th 956 at 971. To satisfy this element, the forum state itself must be the focal point of defendant's conduct. Dudnikov, 514 F.3d at 1074 n.9. In other words, the Tenth Circuit centers the express aiming analysis on whether defendant focused on or directed its allegedly intentional conduct at the forum state—not on whether defendant's wrongful conduct was focused on or directed at the interests of plaintiff who resides in or otherwise has significant connections to the forum state. Eighteen Seventy, 32 F.4th at 972.

Plaintiff alleges that defendant (1) breached its contractual duties to plaintiff by issuing invoices to plaintiff that improperly included undisclosed mark-ups (Count I); (2) knowingly received the benefit of plaintiff's overpayments (Count II); (3) supplied plaintiff with false information in its invoices (Count III); and (4) in its invoices, made false statements concerning material facts (Count IV). These allegations are sufficient to satisfy the first element of the effects test, i.e. that defendant took intentional action.

Under the second element, a defendant must expressly aim its intentional actions at the forum state. Dudnikov, 514 F.3d at 1072. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Only defendant's own actions directed at

the forum state are relevant to the jurisdictional question. Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1066 (10th Cir. 2007).

Plaintiff alleges that after its move to Kansas on September 1, 2021, defendant (1) entered into a contract (Purchase Order #15795) with plaintiff, a Kansas resident, (2) communicated regularly with plaintiff's employees in Kansas, (3) submitted four misleading invoices to plaintiff's office in Kansas, (4) sent plaintiff a Job Costs Summary which showed that it had inflated costs on its invoices and (5) accepted payments related to Purchase Order #15795 from plaintiff's office in Kansas.[3] Petition (Doc. #1-1), ¶¶ 1, 15, 19–24, 30–32, 35–38, 66–78; Svendsen Affidavit (Doc. #16-1), ¶¶ 5, 16–18.

Defendant denies that it purposefully directed its actions at Kansas and contends that any contacts with plaintiff's office in Kansas arose solely out of plaintiff's unilateral decision to relocate its headquarters to Kansas after the parties had entered into Purchase Order #15795. Plaintiff alleges that "on or about September 1, 2021," it relocated its headquarters to Kansas and on September 21, 2021, it issued Purchase Order #15795. Svendsen Affidavit (Doc. #16-1), ¶ 5; Petition, ¶ 15. Plaintiff does not allege that before the parties entered Purchase Order #15795, defendant knew that plaintiff had moved its headquarters to Kansas. Indeed, defendant denies any such knowledge and correctly notes that Purchase Order #15795 lists plaintiff's office in Missouri. See Purchase Order #15795 (Doc. #1-1) at 14. On these facts, plaintiff has not shown that, by entering Purchase Order #15795, defendant purposefully directed its tortious conduct at Kansas.

---

[3] Plaintiff also argues that defendant aimed its conduct at Kansas because it solicited business from plaintiff. Defendant correctly notes that according to the petition, plaintiff (through Chapple) solicited defendant's business. See Motion To Dismiss (Doc. #10) at 5; see also Petition (Doc. #1-1), ¶ 11 ("Haarslev, through Chapple, contacted CMI regarding the production of certain pieces of food processing equipment for the DemKota Project."). The Court therefore does not consider this basis for the exercise of specific jurisdiction.

Plaintiff, however, has alleged facts showing that defendant directed wrongful conduct at Kansas after plaintiff moved its headquarters to Kansas and after the parties entered Purchase Order #15795. Plaintiff alleges that between September 21, 2021 and April 1, 2022, defendant sent to plaintiff's address in Kansas four misleading invoices which breached the terms of the parties' contract and induced plaintiff to pay $235,382.51 in improper mark-ups. Petition (Doc. #1-1), ¶¶ 19, 22, 30, 35. On these facts, plaintiff has alleged that defendant directed wrongful conduct at Kansas.

Defendant also argues that although it sent invoices to plaintiff in Kansas, it did not purposefully direct any activity to Kansas because it contracted with plaintiff to perform work in South Dakota, i.e. that Kansas was not the focal point of the alleged wrongful conduct. The relevant inquiry, however, is whether Kansas was the focal point of the claims which plaintiff asserts. In Dudnikov, the Tenth Circuit held that specific personal jurisdiction existed for two defendants—a British company and its Connecticut-based corporate agent—who acted through a third-party contact to halt plaintiffs' Colorado business from hosting an online auction of fabric prints. Dudnikov, 514 F.3d at 1082. In California, defendants filed a notice of claimed infringement against plaintiffs—which caused eBay to halt plaintiffs' auction. Id. at 1068. The Tenth Circuit concluded that defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident, and neither the lack of defendants' physical presence in Colorado nor the fact that they used a California-based entity to effectuate this purpose diminish this fact." Id. at 1076. Further, the court noted that defendants allegedly "*intended* their extra-forum conduct to reach and affect plaintiffs' business operations in Colorado." Id. at 1069 (emphasis in original).

Here, the fact that the parties contracted for defendant to perform work in South Dakota does not diminish the fact that defendant submitted invoices to plaintiff in Kansas with the alleged

goal of misleading and inducing plaintiff to overpay. Indeed, defendant does not dispute that it submitted the invoices which caused plaintiff financial injury, and "it is that precise alleged harm that plaintiff[] seek[s] to have redressed through this suit." Id. at 1077. In summary, because plaintiff alleges that defendant performed acts "for the very purpose of having [its] consequences felt in the forum state," plaintiff has sufficiently alleged the express aiming element. Id. at 1078 (quoting Finley v. River North Records, Inc., 148 F.3d 913, 916 (8th Cir. 1998) (jurisdiction proper where out-of-state defendant sent fraudulent material into forum state with purpose of inducing plaintiff's reliance, and such reliance was harmful effect for which plaintiff sought redress)).

Finally, plaintiff has met the third element of the effects test which "concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by plaintiff." Dudnikov, 514 F.3d at 1075. Plaintiff alleges that it suffered financial harm in Kansas from defendant's submission of invoices related to Purchase Order #15795. Although defendant argues that plaintiff's principal place of business is in Denmark, it does not dispute that it (1) sent invoices to plaintiff's Kansas office, (2) communicated with employees from that office, (3) received allegedly inflated payments from that office and (4) knew that plaintiff had a Kansas office. See Motion To Dismiss (Doc. #10) at 7–8. Together, these facts make it more than "mere[ly] foreseeable" that defendant knew plaintiff would suffer the brunt of its injury in Kansas. See Dudnikov, 514 F.3d at 1077. Accordingly, plaintiff has met the third element of the effects test.

In summary, plaintiff has satisfied the "effects test" and shown that defendant purposefully directed its activities at the forum state.

B. Traditional Notions Of Fair Play And Justice

Where defendant has minimum contacts with the forum state, the Court must determine whether assertion of personal jurisdiction comports with traditional notions of fair play and

substantial justice.  See Burger King, 471 U.S. at 476; Dental Dynamics, 946 F.3d at 1229.  To do so, the Court considers the following factors: (1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) plaintiff's interest in receiving convenient and effective relief; (4) the interest of the interstate judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental social policies.  Dental Dynamics, 946 F.3d at 1229.  Defendant's showing under these factors operates on a "sliding scale."  Id. The weaker plaintiff's showing with respect to minimum contacts, the less defendant must show in terms of unreasonableness to defeat jurisdiction.  Id.

Defendant argues that because the suit relates to its work in Idaho and South Dakota, defending this case in Kansas imposes a high burden.  To overcome the justification for the exercise of jurisdiction on the burden basis, the inconvenience to defendant must be "so great as to constitute a deprivation of due process."  Rainy Day Books, Inc. v. Rainy Day Books & Cafe, LLC, 186 F. Supp. 2d 1158, 1166 (D. Kan. 2002).  Here, it is not constitutionally unreasonable to require defendant to defend this action in Kansas, particularly "[i]n this era of Internet communications, faxes, telecommunications, and relatively inexpensive travel."  Id.  The Court is not persuaded that exercising personal jurisdiction over defendant will impose a substantial burden.

Defendant does not otherwise address the fairness factors and the Court finds that personal jurisdiction over defendant is reasonable and consistent with notions of "fair play and substantial justice."  This is particularly so in view of the lightness of plaintiff's burden of establishing personal jurisdiction at this early stage of litigation.  See AST Sports, 514 F.3d at 1056.  The Court therefore overrules defendant's motion to dismiss for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED** that Defendant Christensen Machine, Inc.'s Motion To

Dismiss And Memorandum In Support (Doc. #10) filed January 18, 2024 is **OVERRULED.** The stay (Doc. # 20) is hereby lifted and the parties shall immediately inform Magistrate Judge Rachel E. Schwartz of this ruling.

Dated this 18th day of March, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge